MUMFORD v. WARDWELL.

1. Where a paper in the form of a special verdict—except that after stating the facts, it did not refer the decision on them to the court in the conditional and alternative way usual in such verdicts, but found " a general verdict for the plaintiff subject to the opinion of the court upon the foregoing recited facts "—was " *agreed to as* a special verdict " by counsel in the cause, filed of record and passed on as an agreed case by the court below, this court—remarking that as a special verdict the paper was defective, because not ending with the usual conclusion—in view of the facts just mentioned considered it as a special verdict or agreed case, and on error to a judgment given on it below adjudged the case presented by it.

2. Where a statute gave to a city named, certain lands of the State, excepting such as had been sold or granted by a certain body or certain officers in accordance with terms specified, or had been sold or granted by a certain officer and confirmed by a certain body, but declared also that the deed by which any of the excepted lands were conveyed by such body or officer should be "*prima facie* evidence of *title* and possession, to enable the plaintiff to recover possession of the land so granted:" *Held*, that the deed made under the statute being in evidence, a compliance with the terms upon which sales were to be made (such as sufficient notice) was, under its terms, primarily to be presumed, and that it was cast upon any one alleging *non*-compliance to prove it.

3. Where a statute of California, passed in 1851, granted certain lands, excepting from the grant such as had been granted by a particular officer,

and "registered or recorded on or before April 3d, 1850, in some *book* of record now in the office, &c., of the recorder of the county:" *Held.* that the term "book" was satisfied, within the meaning of the act, by copies' of the deeds on sheets not bound or fastened together in any manner, but folded, the name of the purchaser and number and designation of the class of the lot sold being indorsed thereon, each distinct class being kept in a separate bundle, and the sheets not being bound up in the form of books, until 1856, when they were so bound ; each class forming a separate volume.

Error to the Circuit Court for the Northern District of California.

Mumford—plaintiff both below and in error here—brought ejectment against Wardwell for a " one *hundred*-vara lot," No. 186 on the official map of San Francisco. Plea, possession as owner under a good title. The record showed that the case was set down on that issue for trial August 26th, 1863, when the jury found a verdict in these words :

*J. E. Mumford* v. *C. Otis Wardwell, United States Circuit Court, Northern District of California.*

We, the jury, find a verdict for the plaintiff, subject to the opin ion of the court.

George Amerage,
Foreman.

San Francisco, August 26th, 1863.

The finding set forth no case, nor had any been previously stated. This verdict was entered of record; but no notice apparently taken afterwards of it. Subsequently, on the 29th August, *by consent of counsel,* it was ordered that the further hearing of the cause should be set down for September 5th. The record went on :

" And afterwards, to wit, on the 5th day of September, A. D. 1863, the following special verdict, by stipulation of counsel, was duly entered of record in said cause, to wit:

### Special Verdict.

In the Circuit Court of the United States for the Northern District of California.

JAMES E. MUMFORD, Plaintiff, *v.* CHAS. O. WARDWELL, Defendant.

#### AT COMMON LAW.

And now, on this 26th day of August, A. D. 1863, come the parties aforesaid by their respective attorneys, and thereupon come a jury, to wit: [the names of the jurors were here given], twelve good and lawful men, who, being duly elected, tried, and sworn, the issues herein joined between said parties well and truly to try, and a true verdict to render according to the evidence, after hearing the evidence of said parties respectively, the jurors aforesaid upon their oaths aforesaid do say;"

Following this was set forth the titles of the respective parties to the lot in controversy. The document ended thus, the signatures of the respective counsel being appended at the end:

"And the jurors aforesaid, upon their oaths aforesaid, do further say that they find *a general verdict for the plaintiff, subject to the opinion of the court upon the foregoing recited facts.*

"The above is *agreed to as a special verdict in this cause.*"

It will be observed that in what was here agreed to " as a special verdict," there was no such conclusion as is technically usual in special verdict actually found by a jury; that is to say, the finding did not, after presenting the case, refer the decision of it to the court, with the conditional and alternative conclusion, that if the court should be of the opinion, in view of the facts, that the plaintiff was entitled to recover, then they found for the plaintiff, but if otherwise, they found for the defendant.

But this matter was not the subject of remark either by counsel here or apparently by them in the court below; and the paper agreed to was treated everywhere as a case agreed on and stated for the opinion of the court.

The title of the respective parties as set forth in the case as settled was as follows, that of the defendant, for more clearness, being here stated first:

1. *Defendant's Title.* The lot was what was called a water-

lot; that is to say, formed part of certain flats, situated below the high-water mark of San Francisco Bay. The conquest of Mexico, in 1846, having put the whole region about San Francisco into the control of the military authorities of the United States, General Kearney, then acting as Military Governor of California, by deed reciting that he was acting in virtue of authority vested in him by the President of the United States, conveyed these flats (with some unimportant reservations) to the town of San Francisco; a proviso being attached to the grant that they should be divided into lots, and after three months' notice sold at auction to the highest bidder for the benefit of the town. On the 1*st day of December*, 1849, the ayuntamiento or town council of San Francisco ordained:

"That two hundred *fifty*-vara town lots be sold at public auction on *Friday, the* 10*th instant.*"

On the same 10th of December, 1849, General J. W. Geary, then acting as alcalde of San Francisco (under which title the municipal authority of that city was exercised by officers, either appointed by the military commandant or elected by the people)—by deed reciting that the ayuntamiento or town council of San Francisco, by resolution passed on the 1*st day of December*, 1849, had ordered that certain town lots should be exposed to public sale and sold to the highest bidder, and that after *due public notice*, &c., one of the said lots, No. 186, so ordered to be sold, was sold to D. O'Brien, &c.—granted and conveyed the said lot, No. 186, to O'Brien aforesaid.

This deed, like every other deed made by Alcalde Geary during his term of office, consisted of a printed blank on one sheet, filled up at the time it was issued; and like them was not registered or recorded except in the following manner, that is to say: Copies of the deeds consisting of similar blanks, filled up in like manner by the clerk of Alcalde Geary, were retained in the office of the alcalde. These copies were *folded up*, the name of the purchaser and num-

ber of the lot and designation of the class to which it belonged—(that is to say, whether one hundred-vara, fifty-vara, or water-lot)—being indorsed thereon, and those of each distinct class were kept in said alcalde's office in a separate *bundle;* but these several copies were not *bound or fastened together in any manner.* In that state they passed into the office of the county recorder, on its organization in 1850, where they continued to remain until 1856, *when they were bound up in the form of books,* each class forming a separate volume. The grant to O'Brien was filled up in the manner above stated, and a copy of it also, made as above stated, was kept in like manner in the bundle composed of copies of grants of one-hundred-vara lots, and so continued until the time it with the other copies was bound up as abovesaid, in 1856.

Whether General Kearney had authority to make a grant such as he did make to the town of San Francisco, or whether the ayuntamiento or town council of San Francisco ever directed a sale of the lot in question,—which it will be remembered was a hundred-vara lot, not a fifty-vara one,—the case agreed on as a special verdict did not state.

Some time after the sale, that is to say, on the 26th of March, 1851, the legislature of California granted these flats, including this lot, to the city of San Francisco for ninety-nine years. But the statute contained (§ 2) two exceptions. It excepted from its operation those portions of the flats which had been either,

*First,* "Sold by authority of the ayuntamiento, or town or city council, or by any alcalde of the said town or city, at public auction, *in accordance with the terms of the grant known as Kearney's Grant to the City of San Francisco,"* or

*Second,* "Sold or granted by any alcalde of the said city of San Francisco, and *confirmed* by the ayuntamiento or town or city council thereof, and also *registered* or *recorded* on or before the 3d day of April, A. D. 1850, in some *book of record,* now [that is, on the 26th day of March, A. D. 1851] in the office, or custody, or control of the recorder of the county of San Francisco."

It contained also (§ 3) this enactment as to the effect, viewed as evidence, of any deed, by which any of the lands excepted were conveyed or granted by any ayuntamiento, common council, or alcalde; declaring that it

"Shall be *primâ facie* evidence of *title* and possession to enable the plaintiff to recover possession of the land so granted."

Such was the title of Wardwell; defendant below and here.

2. *The plaintiff's* was a sheriff's deed for the lot, on execution upon a judgment against the city of San Francisco, all confessedly regular, but all subsequent to the statute above quoted.

On this case the court below entered judgment for the defendant, Wardwell.

*Mr. T. Ewing, Jr., for the plaintiff in error, Mumford:*

It will be conceded by opposing counsel, that General Kearney, as military commandant, had no power to make such a grant as he did. The grant was void. The flats or ground under a navigable bay, remained the property of the United States. On the admission of California into the Union, they became hers. She granted them to the city of San Francisco, and under the sheriff's deed the title is in the plaintiff, unless the defendant brings himself within one of the two exceptions of the statute of 1851. The burden of doing this is on him. *Prima facie* the case is with the plaintiff.

Plainly the defendant cannot bring himself within the first exception. General Kearney's grant required in terms *three months'* notice of the sale to be given. Of this sale but ten days' notice, at most, was given. The defendant would therefore bring himself doubtless within the second exception. Admitting then—which we do not admit—that the particular lot described in Geary's deed was ever in fact sold or granted by that alcalde; still the sale does not come within the second exception, and is inoperative, because—

1. It was never "confirmed" in any manner by the ayuntamiento or town or city council of San Francisco. Indeed, no "confirmation"—that is, no approval subsequent to the sale—was ever perhaps thought of. Alcalde Geary plainly supposed that he was selling under the authority previously given in the ordinance of 1st December, 1849—which ordinance indeed he recites as the authority for his act. But this was a mistake. The ordinance authorized sales of *fifty*-vara lots alone. The record, which appears, of an ordinance, passed 1st December, to sell fifty-vara lots, is convincing proof that there was no ordinance of the same day to sell hundred-vara lots. Both would have been recorded as certainly as the one was. The sale of hundred-vara lots was therefore *supra vires;* and void as in excess of the power given.

2. In no sense in which the words in question could have been used by the legislature, does the case stated show a registering or recording of the deed in a "*book* of record." The word "book" has always signified a number of sheets of paper or parchment, if not bound, yet at least sewed or attached together in some manner, so as to constitute a volume; something that can be opened, turned over, and read. It has never signified, nor been applied to a bundle of folded papers; still less to a single sheet in such bundle.*

*Messrs. Botts, Dwinelle, and Lake, contra :*

We concede that the attempt of General Kearney to bestow these lands upon the town of San Francisco was ineffectual.†
We concede, too, that the State of California, when admitted into the Union, succeeded the United States as sovereign proprietor of all lands situate below ordinary high-water mark and within its borders; including, of course, these flats.‡ The only question then is whether the defendant is

---

* Chapin *v.* Bourne, 8 California, 296.

† Wilcox *v.* Jackson, 13 Peters, 512, 513 ; United States *v.* Fitzgerald, 15 Id. 421 ; United States *v.* Hare, Circuit Court of the United States for California, October, 1867 ; MS.

‡ Pollard's Lessee *v.* Hagan, 3 Howard, 212.

included within either of the exceptions of the statute of 1851. . . We submit that he is within both; or if not, certainly that he is within the second.

1. The State of California, who owned the land, had a right to grant the lots to the city—the grant being a pure bounty—on what terms she pleased. She does so grant them. She declares that the deed itself " *shall* be *prima facie* evidence of *title*." The effect of this enactment is, that confirmation by the ayuntamiento is primarily to be presumed. The plaintiff must show, affirmatively, that there was no such confirmation. The deed itself, which is of a *hundred-vara* lot, recites a resolution of the town council, passed December 1st, A. D. 1849, ordering a sale of the lot in question. That a resolution was passed by the council on the same day, ordering a sale of *fifty-vara* lots, is unimportant. That resolution shows that *fifty-vara* lots were ordered to be sold, but does not exclude the idea of a resolution being passed at the same meeting ordering *hundred-vara* lots to be sold.

2. Was the deed " registered or recorded in some *book* of record ?" We submit that it was so; at least was so within the design of the act. Binding does not constitute a book. A book *may* be a bound book, but it may also be one not bound ; a book stitched or even yet in sheets. The sheets in the recorder's office furnished materials ready to assume the form of *bound* books, which they did assume under the binder's hands in 1856. The thing to be attained was the preservation of record evidence of the grant in an authentic, permanent, and accessible form; and the purpose evidently was, not to give constructive notice of the existence of such grants, but to prevent the fabrication of spurious titles. They were already " records," whether bound or not.* Interpreting, then, the statute according to its spirit and intent, these two " separate bundles" of official copies of official grants, constituted two separate "books of record." Suppose a book of records falling to decay, and the sheets becoming loose during the period between the destruction

---

* Kyburg *v.* Perkins, 6 California, 674.

of the old binding and the rebinding, would there be no " book of records ?"

*Reply :* 1. Whatever might be reasonably argued under the *prima facie* effect given by the statute to the deed, if there was no evidence of *any* order of sale by the ayuntamiento on the 1st December, 1849, we submit that by the admitted order to sell fifty-vara lots—the only order in the case—the *prima facies* of an order to sell one-hundred vara lots on that same day *is* rebutted.   In other words, when we showed a resolution of a public body like the ayuntamiento, passed December 1st, 1849, ordering a sale of town lots of one sort to take place December 10th, 1849, corresponding exactly with the resolution recited by the alcalde, as his authority for making a sale of another and different kind, the presumptions made it incumbent on defendant to put in evidence a resolution of the same date authorizing a sale of the different kind.   It is a case where the *expressio unius* infers the *exclusio alterius.*

2. A bundle of copies of deeds is a very important part of the " materials" by the aid of which a book of copies of deeds may be made; but bundled up and " not fastened together in *any* manner," they are not, in that condition, a "book" in any sense.

Mr. Justice CLIFFORD delivered the opinion of the court.

Plaintiff brought ejectment against the defendant to recover possession of a certain tract of land situated in the city of San Francisco, describing it by metes and bounds, and as the one hundred-vara lot numbered one hundred and eighty-six, as laid down and represented on the official map of the city.   Defendant pleaded that he was in the possession of the lot as owner under a good title, which the plaintiff in his replication denied.   Parties went to trial upon that issue, and the jury impanelled to try the issue returned the following verdict, as appears by the record: We, the jury, find a verdict for the plaintiff, subject to the opinion of the court.

I. 1. Such a verdict is certainly irregular in form, and it does not appear that it was ever made the subject of any

further action.   Instead of affirming or amending it, or setting
it aside, the parties and the court seem to have treated it as
a nullity.   No notice whatever was taken of it except that
the cause was set for hearing at a subsequent day, but when
the time for the hearing came, the parties, by stipulation,
entered of record the paper called the special verdict.

Statement of the introductory allegation of the paper is,
that a jury came, and that they were duly impanelled and
sworn, and that, having heard the parties, they found the
facts as therein recited, but it is not signed by the foreman,
and the statement in the conclusion is, that the jury return
a general verdict for the plaintiff, subject to the opinion of
the court upon the recited facts.

Irrespective of the agreement of the parties, it would be
difficult to regard the document as the proper foundation of
a judgment, because the alleged finding of the jury is not in
the alternative, as it should be in a special verdict.

2.  Correct practice in such cases is, that the jury find the
facts of the case and refer the decision of the cause upon
those facts to the court, with a conditional conclusion that if
the court should be of opinion, upon the whole matter as
found, that the plaintiff is entitled to recover, then they find
for the plaintiff, but if otherwise, then they find for the de-
fendant.   By leave of the court such a verdict may be pre-
pared by the parties, subject to the correction of the court,
and it may include agreed facts in addition to those found by
the jury.   When the facts are settled and the verdict is re-
duced to form, it is then entered of record, and the questions
of law arising on the facts so found are then before the court
for hearing as in case of a demurrer.

3.  Verdicts should be general or special, as the jury, in
the absence of directions from the court, have nothing to
do in respect to a special case.   Principal purpose of a special
case is, that the court may have time to hear the parties and
give the questions of law arising at the trial a more deliberate
consideration.

4.  Such being the understanding between the court and
the bar, the entry is made in the minutes that the verdict is

subject to the opinion of the court, but the entry follows the verdict and is no part of the finding of the jury.

5. Where the verdict is general the court may enter judgment on the verdict, or may set it aside and grant a new trial, but the rulings of the court during the trial cannot be revised on writ of error save by a regular bill of exceptions. Judgment also may be rendered on the verdict 'in a special case, or a new trial may be granted because the verdict is general, and is for plaintiff or defendant.

6. Exceptions to the order of the court in granting a new trial do not lie in any case, and the losing party in case of judgment in a special case cannot except to the rulings of the court during the trial, unless he seasonably reserved the right to turn the special case into a bill of exceptions, because the court has no power, unless otherwise agreed, to render any judgment except upon the verdict of the jury.

7. Special verdicts having a conditional or alternative finding are the proper foundation of a judgment for either party, as the law of the case on the facts found may require, and consequently the judgment of the subordinate court on such a verdict, whether for plaintiff or defendant, may be re-examined in the appellate tribunal without any bill of exceptions.*

Viewed strictly as a special verdict, it is evident that the paper under consideration is defective, because it does not contain the conditional or alternative finding of the jury, and in that respect it is irregular.

But the parties intended to agree, and did agree, that the facts as found were correct, and entered the paper of record at the time under the leave of the court as a correct statement of the facts in the case. They do not appear to have taken any distinction between a special verdict and a special case, or an agreed statement of facts, and the record shows that the judgment of the court was rendered wholly irrespective of any such distinction. Both parties appear to have

---

* Suydam *v.* Williamson et al., 20 Howard, 432; 3 Blackstone's Commentaries, 378; Seward *v.* Jackson, 8 Cowen, 406; State *v.* Wallace, 3 Iredell, 195.

treated the paper as an agreed statement in the court below, and it has been treated in the same way in this court. Undoubtedly the general verdict was superseded when the paper in question was entered of record, as that was done under the sanction of the court and by the consent of both parties, and it is certain that the parties intended that the controversy should be finally decided upon the facts as therein agreed.

8. Doubt cannot be entertained upon that subject, and yet such a result cannot follow if the paper is held to be a special verdict, unless the opinion of the court is in favor of the plaintiff, as there is no proper conclusion in it to warrant a judgment for the defendant. Regarded as an agreed statement, the paper is in due form, and inasmuch as no objections are made to the proceedings, the court here adopts that view of the subject as the correct one in the case.

II. Reference will first be made to the title of the plaintiff as shown in the agreed statement. He claims title under a sheriff's deed of the lot, bearing date October 17th, 1859, which is in due form, and was duly executed and recorded. Prior to that time judgment had been recovered against the city of San Francisco by one of her creditors, in the sum of one thousand and seventy dollars and twenty-five cents, and the city failed to pay the amount. Execution was duly issued on the judgment and delivered to the sheriff of the county for legal service, and the sheriff, in obedience to the command of the process, sold the lot in question to the purchaser as the highest bidder.

Title of the plaintiff is deraigned through various mesne conveyances from the grantee of that deed, as fully explained in the agreed statement. Parties agree that the lot is below what was, prior to any improvements, the natural high-water mark of the bay, and that prior to March 26th, 1851, it was at all ordinary high tides wholly covered with the tide-waters.

III. 1. Source of the title of the defendant is a deed from the alcalde of the town, dated December 10th, 1849, to Daniel O'Brien, as set forth in the transcript, and as confirmed by the second section of the Water-lot Act. He holds that title,

whatever it may be, as deraigned through a regular chain of mesne conveyances from the original grantee. Possession of the premises was in the defendant at the commencement of the suit, and it appears that he had been in the actual possession of the same for the period of three years.

2. Mexican rule came to an end in that department on the 7th of July, 1846, when the government of the same passed into the control of our military authorities.\* Municipal authority also was exercised for a time by subordinate officers appointed by our military commanders. Such commander was called military governor, and for a time he claimed to exercise the same civil power as that previously vested in the Mexican governor of the department. By virtue of that supposed authority, General S. N. Kearney, March 10th, 1847, as military governor of the territory, granted to the town of San Francisco all the right, title and interest of the United States to the beach and water-lots on the east front of the town, included between certain described points, excepting such lots as might be selected for government use.

Requirement of the grant was, that the land granted should be divided into lots, and that the lots should be sold after three months' notice, at public auction, for the benefit of the town. Pursuant to that requirement, numerous lots were surveyed and laid out, and public sales of the same took place at various times as recited in the agreed statement. Lot one hundred and eighty-six was subsequently sold at public auction by the alcalde of the town, and the same was conveyed by deed or grant in due form to the original grantee, under whom the defendant deraigned his title.

3. But the power to grant lands or confirm titles was never vested in our military governors; and it follows as a necessary consequence that the grant as originally made was void and of no effect. Nothing passed to the town by the grant, and, of course, the doings of the alcalde in selling the lot in question was a mere nullity.

4. California was admitted into the Union, September 9th,

---

\* United States v. Castillero, 2 Black, 149 ; Romero v. United States, 1 Wallace, 743.

1850, and the act of Congress admitting her declares that she is so admitted on equal footing, in all respects, with the original States.* Settled rule of law in this court is, that the shores of navigable waters and the soils under the same in the original States were not granted by the Constitution to the United States, but were reserved to the several States, and that the new States since admitted have the same rights, sovereignty and jurisdiction in that behalf as the original States possess within their respective borders.†

When the Revolution took place, the people of each State became themselves sovereign, and in that character hold the absolute right to all their navigable waters and the soils under them, subject only to the rights since surrendered by the Constitution.‡

5. Necessary conclusion is, that the ownership of the lot in question, when the State was admitted into the Union, became vested in the State as the absolute owner, subject only to the paramount right of navigation. Corporate powers were exercised by the city of San Francisco prior to the time when the State was admitted into the Union, but she was reincorporated April 15th, 1851, and the agreed statement shows that the lot described in the complaint is within the corporate limits of the city.

6. Certain lots of land situated in the city and within certain described boundaries were designated in the first section of the act of the 26th of March, 1851, as the beach and water-lots of the city.§ Second section of the act granted the use and occupation of all the land so described to the city for the term of ninety-nine years, with certain exceptions as therein provided. First, exception was made of all lands so described which had been previously sold by authority of the ayuntamiento, or town or city council, or by any alcalde of the town or city, at public auction, in accordance with the Kearney grant. Secondly, same exception

---

* 9 Stat at Large, 452.

† Pollard's Lessee v. Hagan et al., 3 Howard, 212.

‡ Martin et al. v. Waddell, 16 Peters, 410.

§ Wood's Digest, 519.

was also made of all lands so described which had been granted or sold by any alcalde of the city, and confirmed by the ayuntamiento, or town or city council, and registered or recorded on or before April 3d, 1850, in some book of record now in the office or custody or control of the recorder of the county, and the provision is that all such excepted lands shall be, and the same are hereby, granted and confirmed to the purchasers or grantees or the persons holding under them, for the term of ninety-nine years.  The lot in question is included within the boundaries described in the first section of that act, and it appears that it is not any part of the lands reserved for public use.

7.  Based on these facts, the proposition of the defendant is, that his title is a good one, and that the judgment of the Circuit Court should be affirmed.  First, because it appears that the lot being within the first exception, never passed to the city, as it had been previously sold to the original grantee, under whom he claims, at public auction, by an alcalde of the town, in accordance with the terms of the Kearney grant. Secondly, because the lot being within the first section of the Water-lot Act, and having been sold, confirmed, and registered or recorded as required in the third clause of the second section of that act, the title to the same under that sale was ratified to the purchaser by the succeeding clause of that section.  Express admission of the parties is, that the lot in question is included within the boundaries described in the first section of the Water-lot Act, and the third section of the same act provides that the original deed by which any of those lands were conveyed by any ayuntamiento, alcalde, or common council, shall be *prima facie* evidence of the title and possession.*

8.  Conveyance of the lot in question was previously made by an alcalde, and the deed of conveyance contains the recital that due public notice of the intended sale was given before it was exposed to sale, and sold to the original grantee. Order of sale was passed by the ayuntamiento only ten days

---

* Wood's Digest, 520.

before the sale, but there is nothing in the agreed statement to prove that the full notice as specified in the grant to the town had not been previously given as required. Clear in-ference from the recitals of the deed is, that it had been previously given, and the burden of disproving the presumption is, by the express words of the third section of the act, cast upon the party alleging the contrary.

IV..1. Suppose, however, it were otherwise, still the judgment of the Circuit Court is correct, because the agreed statement shows that the lot in question was sold by an alcalde, and confirmed by the ayuntamiento, and registered or recorded within the time required, in a book of record in the office, custody or control of the recorder of the county. Confirmation of the sale by the ayuntamiento is clearly shown, but it is insisted by the plaintiff that the deed was never registered or recorded within the meaning of that requirement. Like the military governor, Alcalde Geary claimed to exercise powers vested in the alcaldes under the Mexican rule, and following the usages of some of his predecessors in office, he made his grants in duplicates, and delivered the original to the grantee, and filed the duplicate copy in his office.

2. Duplicate copies retained in the office were labelled with the name of the purchaser, number of the lot, and the class to which the grant belonged. Such duplicates, although regularly classified and indorsed, were not bound in the form of a book, but each class was kept in a separate bundle, and in that state they were passed into the office of the recorder of the county at its organization. They remained there till 1856, when they were bound into the form of books, each class forming a separate volume.

3. Those books are the only registry ever made of the original titles to these beach and water-lots. Unless it be held that the grant in this case was registered or recorded within the meaning of that act, then all the titles are defective, as none of them were registered in any other way.*

---

* United States v. Osio, 23 Howard, 279.

Evidently the legislature assumed that some of the lots were duly registered as required, because the act proceeds to grant and confirm all such land to purchasers or grantees and persons holding under them, for the same term as the other lands are granted to the city.

4. Jurisdiction under the Mexican rule had come to an end more than three years when the Water-lot Act was passed, and it is a reasonable presumption that the legislature knew what the course of proceeding had been in making those grants, and in what condition the evidences of the title were, as they existed in the recorder's office. All the act required was, that it should appear, if the land had been sold by an alcalde, that it had been confirmed by the ayuntamiento, and that it had been registered or recorded in some book of record now in the office, custody or control of the recorder.

5. Most or all of the grants were made before the office of recorder of the county was created, and of course it cannot be held that the act required that the grants should have been recorded by that officer at the time they were issued. No such registry was in existence at the time, and the better opinion is, that the grants of lands so sold and confirmed are duly registered or recorded within the meaning of the requirement in all cases where the duplicate copy of the grant was, at the date of the Water-lot Act, regularly deposited in the office of the county recorder. Although not bound at that date, they had been classified and have since been bound into volumes. Looking at the case in any point of view consistent with the agreed facts, our conclusion is, that the plaintiff shows no title, and that the decision of the Circuit Court was correct.

JUDGMENT AFFIRMED, WITH COSTS.