The YANKTON SIOUX TRIBE OF INDIANS, Appellee,

v.

Kenneth NELSON, Daniel Svotas, De Wit Harold, State of South Dakota, Appellant.

Charles Mix County, South Dakota.

The YANKTON SIOUX TRIBE OF INDIANS, Appellee,

v.

Kenneth NELSON, Daniel Svotas, De Wit Harold, State of South Dakota, Charles Mix County, South Dakota, Appellant.

Nos. 81–2148, 81–2302.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1982.

Decided July 12, 1982.

John W. Keller, Jr., Huron, Arlinda Locklear, Native American Rights Fund, Washington, D. C., Yvonne T. Knight, Native American Rights Fund, Boulder, Colo., for appellees.

Mark V. Meierhenry, Atty. Gen., Daniel J. Doyle, Asst. Atty. Gen., Pierre, S. D., for appellants.

Tom D. Tobin, Tobin Law Offices, P. C., Winner, S. D., David Albert Mustone, Tobin Law Offices, P. C., Washington, D. C., for Charles Mix County.

Arlinda Locklear, Lawrence Aschenbrenner, Native American Rights Fund, Washington, D. C., Yvonne T. Knight, Native American Rights Fund, Boulder, Colo., John W. Keller, Jr., Huron, S. D., for Yankton Sioux Tribe.

Before BRIGHT and JOHN R. GIBSON, Circuit Judges, and HARRIS,[*] Senior District Judge.

BRIGHT, Circuit Judge.

Charles Mix County, South Dakota (the County), and the State of South Dakota (the State), appeal from a summary judgment ruling that the Yankton Sioux Tribe of Indians (the Tribe) holds title to the bed of Lake Andes, in southeastern South Dakota. For the reasons discussed below, we vacate the order granting summary judgment, without prejudice, and remand for further proceedings consistent with this opinion.

### I. Background.

In August of 1976, Kenneth Nelson, Daniel Svotas, and De Wit Harold, all non-Indians, entered the dry bed of Lake Andes to harvest a crop of kochia (fireweed) that had grown on the lakebed when the water receded due to drought. The Tribe instituted this action against these individuals claiming ownership of the lakebed, and seeking a declaratory judgment, injunctive relief, and damages. The State of South Dakota and Charles Mix County intervened, and upon dismissal of the individual defendants, remained the only defendants in the action. The district court explained the parties' contentions and the procedural aspects of the case as follows:

On November 29, 1976, the Tribe moved for Summary Judgment alleging that there existed no issues of fact and that the Tribe owned the lakebed as a matter of law. The Tribe alleges that by virtue of the Treaty of 1858, wherein the Tribe conveyed to the United States all their land except four hundred thousand acres, the Tribe owns the bed underlying Lake Andes. The Tribe claims that since its title to the lakebed has not been extin-

---

[*] OREN HARRIS, United States Senior District Judge for the Western and Eastern Districts of Arkansas, sitting by designation.

guished the Tribe is the rightful owner of the lakebed.

Charles Mix County and the State, in opposition to the Tribe's Motion for Summary Judgment, contend that the issue of navigability of Lake Andes, being a question of fact, renders Summary Judgment inapposite. The State, however, later made its own Motion for Summary Judgment wherein the State submits that based upon the extensive record before the Court, including a large number of affidavits concerning the question of navigability, the Court should find that Lake Andes is non-navigable. Upon a finding that Lake Andes is non-navigable the State argues further that in allotting the Yankton Sioux Reservation and ceding the unallotted lands back to the United States, that the Tribe, as well as the United States, intended to terminate tribal ownership of the lakebed. [*Yankton Sioux Tribe of Indians v. Nelson*, 521 F.Supp. 463, 464–65 (D.S.D.1981).]

The court ruled that the Tribe retained ownership of the bed of Lake Andes by virtue of the 1858 Treaty and that the Tribe had not relinquished title to the lakebed during the allotment process. *Id.* at 466. The district court determined that *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), and *United States v. Holt State Bank*, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465 (1926), did not control this controversy because of differences in treaty language and because, here, the Tribe held aboriginal title to the lakebed, which the United States had never expressly extinguished.

■ In granting summary judgment for the Tribe, the district court did not expressly rule on the underlying question of navigability. The parties, however, agree that the district court's decision rested on an assumption that Lake Andes was a navigable lake at the relevant times.[1]

## II. *Discussion.*

On appeal, the Tribe, the State, and the County all urge this court to reach the merits of this case. The State raises three principal arguments to refute the Tribe's claim of ownership of the lakebed: (1) if Lake Andes was navigable at the creation of the Yankton Sioux Reservation by the Treaty of 1858, then the United States held the lakebed in trust for the future state, and title to the lakebed passed to the State of South Dakota upon its admission to the Union in 1889, under the equal footings doctrine, *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); (2) the Tribe extinguished any interest it held in the lakebed when it ceded all unallotted lands on the reservation to the United States in 1892; and (3) if the lake was non-navigable at the signing of the 1858 Treaty, the 1892 Cession Agreement served to divest the Tribe of title to the lakebed.

The County adopts the arguments of the State, but asserts that the district court's decision cannot be upheld without a remand to determine the question of navigability. According to the County, the question of navigability under federal law is ultimately a question of fact. Because the parties disputed that issue, the County contends, the district court should not have implicitly resolved the question of navigability in a motion for summary judgment.

The Tribe contends that no genuine issue of material fact existed on the question of navigability because neither the State nor the County refuted the factual assertions of navigability contained in the affidavits submitted by the Tribe. Alternatively, the Tribe argues that even if Lake Andes was non-navigable at relevant times, this court could affirm the district court's determination of tribal ownership on the theory that

1. Although the parties dispute the effect a finding of non-navigability would have on this case, they agree that different rules would govern the question of who holds title to the lakebed if the lake was non-navigable at the relevant times. Ordinarily, state law controls questions

of title to the beds of non-navigable lakes and streams, unless the United States has expressed its intent when disposing of the riparian lands. *See Oklahoma v. Texas*, 258 U.S. 574, 594–95, 42 S.Ct. 406, 414, 66 L.Ed. 771 (1922).

the lake constituted an important tribal resource which the Tribe had not relinquished by the 1892 Cession Agreement.

 We decline the invitation to reach the merits of this appeal on the present record. The parties advance different theories to sustain or deny the Tribe's claim to ownership of the lakebed, depending upon the navigability of Lake Andes at the relevant times. The district court, however, did not expressly decide the question of navigability. Its decision on ownership, therefore, rests on an uncertain factual basis.

The question of navigability should first be determined by the district court. Without such a preliminary factual determination, a decision on the question of title in this case could amount to only an advisory opinion. Accordingly, without reaching the merits, we vacate the order for declaratory judgment entered in the district court and remand this case for a determination of the navigability of Lake Andes during the time periods relevant to these proceedings.[2]

We award no costs on this appeal.

2. The district court should make findings of navigability or non-navigability for the following time periods: 1858, when the United States and the Tribe entered into the treaty creating the Reservation; 1889, when South Dakota entered the Union; and 1892, when the Tribe agreed to cede the unallotted portions of the Reservation to the United States.