MARTY INDIAN SCHOOL, a subdivision of the Yankton Sioux Tribe, and the Yankton Sioux Tribe, Plaintiffs,

v.

STATE OF SOUTH DAKOTA; R. Van Johnson, Director of the South Dakota Department of Revenue; and Wholesale Supply, Inc., a corporation, Defendants.

No. CIV83–4266.

United States District Court,
D. South Dakota, S.D.

Sept. 5, 1984.

James Olson, Armour, S.D., and John W. Keller, Jr., Huron, S.D., for the plaintiffs.

Gene R. Woodle, Pierre, S.D., for the defendants State of S.D.

R. Van Johnson, and Don A. Bierle, Yankton, S.D., for the defendant Wholesale Supply, Inc.

## MEMORANDUM OPINION

NICHOL, Senior District Judge.

Marty Indian School, a boarding school for Indian students located in "Indian Country" (so stipulated by the parties for purposes of this litigation only) along with the Yankton Sioux Tribe of Indians, ask this Court to issue a declaratory judgment stating that the plaintiffs are exempt from taxation by defendants, and to permanently enjoin defendants from any such taxation.

Plaintiff Marty Indian School, formally known as Marty School Board, Inc. (Board), is a nonprofit corporation under South Dakota law, S.D. Codified Laws Ann. (SDCL) chapters 47–22 to 47–28, inclusive. It has been recognized as an exempt organization pursuant to Section 501(c)(3) of the Internal Revenue Code. The Board purchases soda pop, candy and similar items from the defendant Wholesale Supply, Inc. (WSI), a South Dakota corporation. These snack

items are then sold to the Indian students at the boarding school through canteens operated by the Board.

Defendants State of South Dakota (State) and R. Van Johnson, in his capacity as Director of the South Dakota Department of Revenue, seek to impose the state's sales tax upon the sales of the snack items by requiring WSI to charge the Board four percent of gross receipts from sales, pursuant to SDCL 10–45–2.

Defendants brought a motion to dismiss plaintiffs' complaint, contending first that the Court lacked jurisdiction either because:

(1) the plaintiff failed to exhaust its administrative remedies, or

(2) the South Dakota Department of Revenue has primary jurisdiction over the action, and

(3) the plaintiff Marty Indian School is not within the provisions of 28 U.S.C. section 1362, and is therefore precluded from bringing the action by 28 U.S.C. section 1341.

The defendants also moved to dismiss on the ground that the Eleventh Amendment doctrine of sovereign immunity bars the plaintiff from contesting a state tax in federal court.

The Court, however, the Hon. John B. Jones, District Judge, presiding, denied defendants' motion to dismiss in its order dated April 17, 1984. This Court agrees with Judge Jones' denial of the motion and briefly notes the authority in support of the decision.

■■■ There is no merit to any of defendants' contentions regarding the Court's lack of subject matter jurisdiction. The Yankton Sioux Tribe (Tribe), a recognized tribe of Indians,[1] is a party plaintiff in this action. This Court therefore has jurisdiction pursuant to 28 U.S.C. section 1362, which states:

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band ... wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

Nor does 28 U.S.C. section 1341, which prohibits the district courts from interfering in matters of state taxation where relief may be obtained in state court, bar an Indian tribe from seeking to enjoin the enforcement of a state tax law. *Moe v. Salish & Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).

■■■ Moreover, the plaintiffs' complaint does not fall within the doctrine of sovereign immunity as embodied in the Eleventh Amendment. When the United States sues on behalf of Indians or tribes, the Eleventh Amendment is not a bar. *See* F. Cohen, *Handbook on Federal Indian Law* at 329 (1982 ed.), and cases cited therein. Nor does the Eleventh Amendment stand in the way of a suit by the United States for declaratory or injunctive relief. *See Ex Parte Young,* 109 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The United States Supreme Court has said that tribes suing under 28 U.S.C. section 1362 may be accorded treatment similar to that of the United States had it sued on their behalf. *Moe,* 425 U.S. at 474, 96 S.Ct. at 1642. This case illustrates one of the instances envisioned by the *Moe* court; the Eleventh Amendment does not bar the claim by the plaintiff any more than it would bar the same suit by the United States suing on behalf of the Tribe.

Defendants argue that the State may impose the tax in question because:

(1) the State has the authority to tax corporations pursuant to SDCL 10–45–2,[2] and the Board is such a corporation, and

---

**1.** *See Yankton Sioux Tribe of Indians v. Nelson,* 521 F.Supp. 463 (1981), *remanded on other grounds, Yankton Sioux Tribe of Indians v. Nelson,* 683 F.2d 1160 (8th Cir.1982).

**2.** SDCL 10–45–2 provides in pertinent part:

There is hereby imposed a tax upon the privilege of engaging in business as a retailer, a tax of four percent upon the gross receipts of all sales of tangible personal property ... sold at retail in the state of South Dakota to consumers or users.

(2) sales by WSI to the Board are not exempt from sales tax under the provisions of SDCL 10–45–10.[3]

The Board does not contend that it is exempt by virtue of the exemption set out in SDCL 10–45–10 for a "nonprofit charitable organization which devotes its resources exclusively to the relief of the poor and distressed or underprivileged, and has been recognized as an exempt organization under Section 510(c)(3) of the Internal Revenue Code ...", but rather bottoms its argument on that portion of SDCL 10–45–10 which exempts "any Indian tribe". The State argues vigorously that the Board is not an Indian tribe within the meaning of the statute, and is therefore not exempt. The State's contention is that state chartered corporations such as the Board should be treated as non-Indians even if owned by Indians. F. Cohen, *Handbook on Federal Indian Law* at 355–56 (1982 ed.).

■ This Court, however, finds it unnecessary to reach the question of whether a nonprofit corporation incorporated under state law for the purpose of operating a boarding school for Indian students in "Indian country" is an Indian tribe within the meaning of SDCL 10–45–10, and therefore exempt from the state sales tax. The issue here is whether the State's power to tax under these facts is preempted by federal law, and whether the exercise of State authority may unlawfully infringe on the right of the Tribe to make its own laws and be ruled by them, the two part test set out by *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1979). For purposes of this opinion, therefore, we assume arguendo that the Board is not an Indian

tribe within the meaning of SDCL 10–45–10. Even after making this assumption, the Court finds that the State's power to tax the Board, either directly or indirectly through WSI, is preempted by federal law, violating the first part of the *Bracker* test.[4]

In *Ramah Navajo School Bd. v. Bureau of Revenue*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982), the State of New Mexico attempted to impose a tax on the gross receipts that a non-Indian corporation received from a tribal school board for the construction of a school for Indian children on the reservation. The United States Supreme Court held that "the comprehensive regulatory scheme and the express federal policy of encouraging tribal self-sufficiency in the area of education ..." precluded the imposition of the tax. *Ramah Navajo School Bd.*, 458 U.S. at 846, 102 S.Ct. at 3403. The *Ramah* court breathed new life into traditional preemption analysis, noting that, "We have consistently admonished that federal statutes and regulations relating to tribes and tribal activities must be 'construed generously in order to comport with ... traditional notions of (Indian) sovereignty and with the federal policy of encouraging tribal independence.'" *Id.* at 846, 102 S.Ct. at 3403, *quoting Bracker*, 448 U.S. at 144, 100 S.Ct. at 2854.

The instant case is indistinguishable from *Ramah*. The Yankton Sioux Tribe, like the Ramah Navajo Chapter of the Navajo Indian Tribe, seeks to promote Indian self-determination by creating an Indian school tailored to the needs and goals of Indian people. The Board here, like the Ramah Navajo School Board, was organized as a nonprofit corporation to be operated exclusively by members of the tribe.[5]

---

**3.** SDCL 10–45–10 provides in pertinent part:
  There are hereby specifically exempted from the provisions of this chapter ... the gross receipts from the sales of tangible personal property to ... any relief agency, which shall mean a nonprofit charitable organization which devotes its resources exclusively to the relief of the poor and distressed or under-privileged, and has been recognized as an exempt organization under Section 501(c)(3) of the Internal Revenue Code, or to any Indian tribe.

**4.** The two prongs of the *Bracker* test are independent. *Bracker*, 448 U.S. at 143, 100 S.Ct. at 2583. Violation of either is a sufficient basis for holding the state law inapplicable to activities on a reservation. *Id.* Therefore, we need not reach the infringement part of the test.

**5.** Article II, Section 1 of the Constitution and By-Laws of the Board provides that only enrolled members of the Tribe or American Indian persons living within the boundaries of the

The non-Indian construction company in *Ramah* contracted with the Ramah Navajo School Board to provide products and services directly related to the school and its students. *Id.* at 835, 102 S.Ct. at 3397. WSI, the non-Indian supplier in the instant case, provides products and services to the Board, exclusively for the use of Indian students at the school. Finally, the *Ramah* court found that Congress has enacted numerous statutes empowering the Bureau of Indian Affairs to provide for Indian education, and that the overall effect of these statutes is so comprehensive as to preempt state taxation. *Id.* at 839–40, 102 S.Ct. at 3399–3400. The federal statutes cited as governing the Ramah Navajo School Board in *Ramah* also operate to govern the Board in this case, except for those relating specifically to the Navajo Tribe. For example, the Board is subject to the provisions of the Snyder Act, 42 Stat. 208 (1921), 25 U.S.C. section 13, the Johnson-O'Malley Act, 48 Stat. 596 (1934), 25 U.S.C. section 452 *et seq.*, and the Indian Self-Determination and Education Assistance Act, 88 Stat. 2203 (1975), 25 U.S.C. section 450 *et seq.*, among others. The detailed federal regulatory scheme under which the Board operates is so comprehensive as to be preemptive, just as was the federal statutory scheme in *Ramah*.

An inquiry into whether state regulation such as a sales tax is preempted must also take into account the nature of the federal, state and tribal interests involved. *Bracker*, 448 U.S. at 145, 100 S.Ct. at 2584. While it is well settled (and in the instant case the State concedes) that state law is generally inapplicable to regulate conduct on the reservation involving only Indians, the question is more difficult when the state asserts authority over non-Indian activity on the reservation. *Id.* at 144, 100 S.Ct. at 2584.

The *Ramah* court found a clear expression of the federal interest in the Indian Self-Determination and Assistance Act, 88 Stat. 2203 (1975). The Act states that a

major national goal of the United States is to provide the quantity and quality of educational services and opportunities which will permit Indian children to compete and excel in the life areas of their choice, and to achieve the measure of self-determination essential to their social and economic well being.

*Ramah Navajo School Board*, 458 U.S. at 840, 102 S.Ct. at 3400, *quoting* 25 U.S.C. section 450a(c).

While the sale of candy and other snacks may seem at first blush unrelated to the goal of Indian education and self-determination, the Court finds not only that the sale of these items by WSI to the Board is for the sole use of Indian students, but also that having such snack items available at the school canteens helps create an atmosphere more conducive to positive student attitudes and a good learning environment.

Moreover, imposition of a state sales tax in this case would to a substantial extent frustrate the Congressional purpose of ensuring that no burden be imposed upon businesses trading with Indians on a reservation, except where authorized by Act of Congress. In *Warren Trading Post v. Arizona Tax Comm'n*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965), the Supreme Court faced the question of whether a retail trading post on the Navajo Indian Reservation was subject to a tax on its income from sales to reservation Indians. The Court held that "Congress has taken the business of Indian trading on reservations so fully in hand that no room remains for state laws imposing additional burdens upon traders." *Id.* at 690, 85 S.Ct. at 1245.

In *Central Machinery Co. v. Arizona State Tax Comm'n*, 448 U.S. 160, 100 S.Ct. 2592, 65 L.Ed.2d 684 (1980), the State of Arizona attempted to tax the sale of farm machinery to reservation Indians, arguing that *Warren Trading Post* did not apply because the implement seller did not have a permanent place of business on the reservation, and was not federally licensed to trade with Indians. Justice Marshall, writing for the Court, rejected the argu-

Yankton Sioux Reservation are eligible to be Board members.

ment, stating that the mere existence of the Indian trader statutes[6] preempts the field of transactions with Indians on reservations. *Id.* at 165, 100 S.Ct. at 2596. In the case at bar, the Board (assuming arguendo, as we have, that it is a non-Indian) is an Indian trader just as surely as a non-Indian seller of farm machinery on the reservation is an Indian trader. The Board sells snack items, through the school's canteens, solely to Indian students in "Indian country"; allowing the State to tax those sales either directly or indirectly would frustrate the Congressional purpose set out in both *Warren Trading Post* and *Central Machinery Co.*

The State's interest in imposing the sales tax is its interest in generating revenues generally. Defendants make no argument that revenues gained by the imposition of such a tax on the reservation would be used to benefit Indian children or to encourage Indian self-sufficiency. SDCL 10–45–2 states that the tax is imposed "upon the privilege of engaging in business as a retailer", the same language found in the New Mexico statute at issue in *Ramah Navajo School Board. Ramah Navajo School Board*, 458 U.S. at 846, 102 S.Ct. at 3403. Here, as it was there, the State's interest in increasing revenues generally is insufficient to offset the additional burden such a tax would place on the federal policy of encouraging Indian self-sufficiency, or the Indians' interest· in creating and maintaining a school tailored to the specific needs of Indian students on the reservation.

Although the State has not made the argument, the Court notes that no express Congressional statement of intent is required before preemption may be found. *White Earth Band of Chippewa Indians v. Alexander*, 683 F.2d 1129, 1137–38 (8th Cir.1982), *citing White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980). The detailed federal regulatory scheme in

this case is sufficient for the Court to find Congressional intent to preempt the field.

For the reasons set forth above, this Court holds that the State's power to tax the plaintiffs in this case, either directly or indirectly through WSI, for the sale of snack items to be sold to Indian students at canteens operated by the Board, is preempted by federal law.

Counsel for the plaintiffs may prepare a declaratory judgment and permanent injunction in accordance with this opinion.

---

**6.** For a history of the Indian trader statutes beginning with the Act of July 22, 1790, ch. 33, 1 Stat. 137, *see Warren Trading Post v. Arizona Tax Comm'n.,* 380 U.S. 685, 688–690, 85 S.Ct. 1242, 1244–1245, 14 L.Ed.2d 165 (1965).