The YANKTON SIOUX TRIBE OF INDIANS, Appellee,

and

The United States of America, Intervenor/Appellant,

v.

STATE OF SOUTH DAKOTA and County of Charles Mix, South Dakota.

The YANKTON SIOUX TRIBE OF INDIANS, Appellee,

and

The United States of America,

v.

STATE OF SOUTH DAKOTA and County of Charles Mix, South Dakota, Intervenor/Appellants.

Nos. 85–5289, 85–5290.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1986.

Decided July 22, 1986.

Daniel J. Doyle, Asst. Atty. Gen., Piere, S.D., and Robert L. Klarquist, Washington, D.C., for intervenor/appellant.

Arlinda Locklear, Washington, D.C., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and OLIVER,* Senior District Judge.

* The HONORABLE JOHN W. OLIVER, Senior United States District Judge for the Western    District of Missouri, sitting by designation.

FAGG, Circuit Judge.

The State of South Dakota appeals the district court's determination, 604 F.Supp. 1146, that the Yankton Sioux Tribe of Indians (Tribe) owns the bed of Lake Andes located within the boundaries of the Yankton Sioux Tribe Reservation. We reverse.

The United States acquired sovereign title to Lake Andes and the land underlying its waters in 1803, as part of the Louisiana Purchase. Prior to the Louisiana Purchase, the Tribe, then nomadic, began periodically to hunt buffalo in the area around Lake Andes. Sometime after the Louisiana Purchase, however, the Tribe settled in the area on a permanent and exclusive basis. *See* Joint Appendix 14, 157–58; *see also* Appellee's Brief at 4.

In 1858, the Tribe and the United States entered into a treaty in which the Tribe ceded all lands "owned, possessed, or claimed" by the Tribe except four hundred thousand acres that established the Yankton Sioux Tribe Reservation. 11 Stat. 743, 744. Lake Andes is located within the boundaries of the reservation. In consideration of the Tribe's cession, the United States agreed "[t]o protect the said Yan[k]tons in the quiet and peaceable possession of the said tract of four hundred thousand acres of land so reserved for their future home." *Id.*

The incident giving rise to this lawsuit occurred in 1976 when a number of individuals, all non-Indians, were permitted by South Dakota to enter the reservation to harvest a crop of kochia (fireweed) on the bed of Lake Andes. The Tribe then instituted this action against these individuals, claiming ownership to the lake bed and seeking a declaratory judgment, injunctive relief, and damages for wrongful conversion. South Dakota intervened in the Tribe's lawsuit, and the individual defendants were then dismissed from the case.

In ruling upon cross-motions for summary judgment, the district court determined

that the Tribe held aboriginal title to the bed of Lake Andes. Furthermore, the district court concluded that the United States, in acquiring the lake bed as part of the Louisiana Purchase, gained only "an exclusive right to extinguish the Indian title of occupancy, either by purchase or conquest." *Yankton Sioux Tribe of Indians v. Nelson*, 521 F.Supp. 463, 466 (D.S.D. 1981) (quoting *Johnson v. McIntosh*, 21 U.S. (8 Wheat.) 543, 586, 5 L.Ed. 681 (1823)). Finally, because the United States has not extinguished the Tribe's aboriginal title, the court concluded that the Tribe rather than the State of South Dakota owns the lake bed. *Id.*

On appeal, this court did not reach the merits of the Tribe's claim of ownership but instead remanded the claim back to the district court for a determination of whether Lake Andes was navigable both at the time of the 1858 treaty and at the time of South Dakota's entrance to the Union in 1889. *Yankton Sioux Tribe of Indians v. Nelson*, 683 F.2d 1160, 1163 n. 2 (8th Cir. 1982). On remand, the district court determined that Lake Andes was indeed navigable at those times. *Yankton Sioux Tribe of Indians v. Nelson*, 566 F.Supp. 1507 (D.S.D.1983).

None of the parties challenge the district court's determination that Lake Andes was navigable. Hence, the only issue before us is the ownership of the bed of Lake Andes.

Initially, this court must identify the source of South Dakota's and the Tribe's competing claims of ownership. South Dakota bases its claim of ownership on the United States' acquisition of the lake bed as part of the Louisiana Purchase.

As South Dakota properly observes, the United States, upon acquiring the Louisiana territory, immediately began to hold the land underlying all navigable waters in trust for future states, including South Dakota. *See Montana v. United States*, 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493 (1981). This trusteeship was necessary to ensure that South Dakota, upon its admission to the Union, would possess "the same rights, sovereignty and

jurisdiction * * * as the original States possess within their respective borders," *Mumford v. Wardwell*, 73 U.S. (6 Wall.) 423, 436, 18 L.Ed. 756 (1867), or, in other words, would "enter the Union and assume sovereignty on an 'equal footing' with the established States," *Montana*, 450 U.S. at 551, 101 S.Ct. at 1251. South Dakota contends that this trusteeship was fulfilled in 1889 when South Dakota was admitted into the Union and, as an incident of its sovereignty, it was granted ownership of all lands underlying navigable waters, including Lake Andes, subject only to the United States' power to ensure that such waters remain open for commerce. *See id.*

By contrast, the Tribe traces its claim of ownership to events predating South Dakota's admission to the Union. Specifically, the Tribe claims the record "indisputably establishes that [it] held aboriginal title to Lake Andes at the time of the 1858 Treaty." Appellee's brief at 8. Furthermore, the Tribe argues that its aboriginal title was confirmed in the Treaty of 1858. According to the Tribe, because the 1858 treaty recognized its aboriginal title, and because its title has never been extinguished, the Tribe still holds aboriginal title to the lake bed. As a result, the Tribe claims it, rather than the State of South Dakota, owns the lake bed.

Aboriginal title provides the original natives of this country the exclusive right to occupy the lands and waters used by them and their ancestors before the United States asserted its sovereignty over these areas. *People of the Village of Gambell v. Clark*, 746 F.2d 572, 574 (9th Cir.1984); *see also Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 667–69, 94 S.Ct. 772, 777–78, 39 L.Ed.2d 73 (1974). In order to establish aboriginal title, an Indian tribe must show that it actually, exclusively, and continuously used the property for an extended period of time. *Sac & Fox Tribe of Indians v. United States*, 179 Ct.Cl. 8, 383 F.2d 991, 998 *cert. denied*, 389 U.S. 900, 88 S.Ct. 212, 19 L.Ed.2d 217 (1967); *see also United States v. Sante Fe Pacific Railroad Co.*, 314 U.S.

339, 345, 62 S.Ct. 248, 251, 86 L.Ed. 260 (1941); Note, *Aboriginal Land Rights in the United States and Canada,* 60 N.D.L. Rev. 107, 113–14 (1984). Once established, the United States may extinguish aboriginal title at any time, *see United States v. Sioux Nation of Indians,* 448 U.S. 371, 415 n. 29, 100 S.Ct. 2716, 2740 n. 29, 65 L.Ed.2d 844 (1980); *Tee-Hit-Ton Indians v. United States,* 348 U.S. 272, 279, 75 S.Ct. 313, 317, 99 L.Ed. 314 (1955), but an intent to extinguish Indian title by treaty must be plain and unambiguous. *County of Oneida, New York v. Oneida Indian Nation of New York State,* 470 U.S. 226, 105 S.Ct. 1245, 1258, 84 L.Ed.2d 169 (1985); *Santa Fe Pacific Railroad Co.,* 314 U.S. at 353–56; 62 S.Ct. at 255–56; *Bennett County v. United States,* 394 F.2d 8, 11–12 (8th Cir. 1968).

■ In essence, at issue in this case are two competing claims of ownership, each of which is governed by distinct and well-established doctrines. We find it significant that the Tribe did not have any claim of aboriginal title to the lake bed until after the Louisiana Purchase of 1803. Although it appears that the district court determined the Tribe had established its aboriginal title before the Louisiana Purchase, the record before us does not support such a finding. Indeed, the Tribe's brief even acknowledges that the Tribe's exclusive occupancy of the lake bed did not begin until approximately 1810. *See* Appellee's Brief at 4. Hence, to the extent that the district court held the Tribe's aboriginal title vested before the United States' sovereign title, we conclude that finding is clearly erroneous.

■ The Tribe claims, however, that aboriginal title can ripen after sovereign title attaches and that the Tribe had been in the area long enough for its aboriginal title to attach by the time of the 1858 treaty. *See Turtle Mountain Band of Chippewa Indians v. United States,* 203 Ct.Cl. 426, 490 F.2d 935, 941 (1974). Even assuming that aboriginal title can ever attach to the bed of navigable waters, we hold that when sovereign title is in place and operation of

the equal footing doctrine begins before any claim of aboriginal title has ripened, the state's claim of ownership is preeminent unless a recognized exception to the equal footing doctrine is applicable.

The only recognized exception to the equal footing doctrine is a congressional conveyance of the land underlying navigable waters. The intent to convey, however, must either be explicit or clearly inferrable from the circumstances. *See Montana,* 450 U.S. at 551–52, 101 S.Ct. at 1251; *United States v. Holt State Bank,* 270 U.S. 49, 54–55, 46 S.Ct. 197, 198–99, 70 L.Ed. 465 (1926). The Tribe does not claim any congressional conveyance of the lake bed, either explicitly or by inference.

Accordingly, we conclude that title to the lake bed passed to South Dakota in 1889 under the equal footing doctrine. Our resolution of this issue makes it unnecessary for us to address the other claims raised by the parties.

The judgment of the district court is reversed.